JANKS v. ULEN CONTRACTING CORP.

AUTOMOBILES — ILLEGALLY PARKED TRUCK — CONTRIBUTORY NEGLIGENCE AS A MATTER OF LAW.

Motorist who drove his car at speed of 45 to 55 miles an hour as he came to crest of hill and hit corner of defendant's truck which had been parked illegally on downgrade pavement of same side of highway *held,* guilty of contributory negligence as a matter of law where he had a view of truck for approximately 267 feet and had reduced speed to about 30 miles an hour at time of collision since plaintiff failed to observe the assured clear distance rule, an oncoming car and a ditch preventing plaintiff from going on either side of the truck (1 Comp. Laws 1929, § 4697, as amended by Act No. 119, Pub. Acts 1933).

WIEST, BUSHNELL, and REID, JJ., dissenting.

Appeal from Tuscola; Cramton (Louis C.), J. Submitted June 8, 1944. (Docket No. 47, Calendar No. 41,453.) Decided October 11, 1944.

Case by William Janks against Ulen Contracting Corporation and another for personal injuries sus-

Contributory negligence of plaintiff sufficient to bar recovery, see 2 Restatement, Torts, § 467, also § 475, comment a; causal relation between harm and negligence, §§ 465, 467; contributory negligence defined, § 463.

tained in an automobile accident. Hartford Fire Insurance Company was joined as party plaintiff. Verdict and judgment for plaintiffs. Defendants appeal. Reversed.

*Yerkes, Sells & Putnam* (*Maurice C. Ransford,* of counsel), for plaintiffs.

*Weadock & Weadock,* for defendants.

REID, J. (*dissenting*). This suit is brought to recover damages for personal injuries suffered by plaintiff, William Janks, and by Hartford Fire Insurance Company, joined as plaintiff by consent of defendant, for net loss on account of payment of property damage suffered in a collision on March 8, 1938, between his automobile and defendant's truck unlawfully parked on the highway. Coplaintiff Hartford Fire Insurance Company is bound by the contributory negligence, if any, of Janks. The negligence of defendant is conceded in defendant's brief. The jury rendered a verdict for plaintiff Janks for $1,965 and for plaintiff Hartford Fire Insurance Company for $535. Defendant moved the court to direct the jury to return a verdict of no cause of action on the ground that under the undisputed testimony, as a matter of law, plaintiff Janks was guilty of contributory negligence and, secondly, claimed a violation by Janks of 1 Comp. Laws 1929, § 4697, subd. (a), as amended by Act No. 119, Pub. Acts 1933 (Comp. Laws Supp. 1935, § 4697 [a], Stat. Ann. § 9.1565 [a]).

The declaration charged defendant with negligence in parking its truck on highway M-46 just east of an abrupt hill in such a manner as to render it invisible to traffic approaching from the west until the crest of the hill was reached, and blocking

and obstructing the road by electrical wires and equipment so as to render the same impassable to vehicular traffic and failure to give warnings by signals or look-out to advise other users of the highway of such condition. Defendant's answer denied negligence and claimed Janks was guilty of contributory negligence. The only error complained of is denial of the motion for a directed verdict.

Plaintiff testified that he had always lived in Caro, Michigan, except for intervals; is 34 years of age; has driven a car approximately two or three hundred thousand miles; that he traveled about the State as a commission salesman, had to report at Bay City quite often for new samples and merchandise but as a rule he "worked out of Caro." He may be presumed to be familiar with the road at the point in question. He further testified:

"After I left the Heinman store (in Kingston), I proceeded east on M-46. * * * My approximate driving speed would be between 45 and 55. * * * As I approached this hill I was driving on the right-hand side, that is the south side of the highway. * * * The road surface wasn't wet. Naturally the road was froze underneath and some loose (stones) on top. * * * As I approached the crest of the hill, there were no warning signs out there, or any signs of any kind. I did not see any men. * * * Immediately on reaching the crest I noticed the truck. * * * Then I noticed this car approaching right beside the truck. I immediately blew my horn and I could see the driver of the car opposite the truck try to speed up his car to clear the truck, and my sole hope was to slow down enough so I could avoid the truck and go between the car and the truck. * * * It * * * happened he didn't clear the end of it so I hit the truck, and there was men running around on both sides of the road, so naturally I couldn't go to either side of the road.

"*Q*. Did you have any room to drive on the south side of the truck?

"*A*.  \*  \*  \*  As near as I can remember there was a big sand bank there.  \*  \*  \*  I thought he (the driver of the car coming west) would clear.  \*  \*  \*  It was a very small space, but it wasn't big enough.  \*  \*  \*  The right-hand side of my car hit the corner of the car, right by the headlight  \*  \*  \*  that whole side of the car came right in on me and I hit the windshield, and the steering wheel bent double.  \*  \*  \*  I know I was dazed.  \*  \*  \*  I remember the horn was still blowing.  \*  \*  \*  The blood was in my face and I couldn't see to get out, and I called for some one to help me. Finally one of the men came over there. I was taken to the doctor's office in Kingston.  \*  \*  \*  It was not possible to repair my car. They sold it for salvage."

A witness for plaintiff, John Richter, testified:

"I was standing in Mr. Congdon's driveway.  \*  \*  \*  The truck of the Ulen Contracting Company  \*  \*  \*  was just about straight across from me  \*  \*  \*  on the other side of the road, facing east.  \*  \*  \*  There was quite a few  \*  \*  \*  men around this location who were working  \*  \*  \*  for the Ulen Contracting Company. They were pulling on these wires getting ready to hook onto them.  \*  \*  \*  I saw Mr. Janks' car coming over the hill from the west. The first I knew about it  \*  \*  \*  the horn blowing so loud and down the hill, and he run into the corner of the truck and the truck went into the ditch.  \*  \*  \*  Another car was coming right along the side of the truck, almost alongside of it.  \*  \*  \*  I have driven a car eight years.  \*  \*  \*  My view was good, so I could watch the Janks car from the time it broke over the hill until the collision, and I did watch it.  \*  \*  \*  The speed of that Janks' car  \*  \*  \*  I would say (was) between 50 and 60 miles per hour.  \*  \*  \*  Probably slowed down

to about 30 I would think at the time of the colli-
sion.   *   *   *   It was slowing down the minute it
broke over the hill.''

Homer Hilliker, deputy sheriff, testified that he
made measurements of the highway at the point
where the accident occurred and that the width of
the traveled portion of the highway was 30 feet, 6
inches wide, that just back of the truck where the
truck made a hole in the fence there was a fence
post and the distance from that post westerly to
the top of the hill was 150 feet, and that the tops
of the jurors' hats as they stood at the post were
visible at a point 117 feet westerly from the top of
the hill.

It seems therefore a fair inference from the testi-
mony that the plaintiff could have seen the top of
the parked truck 117 feet before he reached the
crest of the hill and at that time probably could not
determine that the truck was parked.  The truck
was parked with the left wheel about 3 feet south-
erly of the median line of the highway.

While the testimony indicates that immediately
upon arrival at the crest of the hill plaintiff began
to apply his brakes, and thus get his car under bet-
ter control, he was laboring under some uncertainty
as to whether the car approaching from the east on
the northerly side of the road would permit plain-
tiff to pass around the truck.  There is competent
testimony to indicate that as soon as he was able to
form a judgment in respect to that matter he ap-
plied his brakes further.  Plaintiff testified that im-
mediately upon arrival at the crest of the hill he
applied his brakes and ''continued stopping.''

''Q.  As you topped the hill it looked to you
*   *   *   as though he was parked?

''A.  As though he came almost to a complete
stop.  If he was moving he was barely moving.

"*Q.*  Where was he with reference to the truck at that time?

"*A.*  Right opposite.

"*Q.*  So he didn't appear to you when you were at the crest of the hill to be moving to any extent at all?

"*A.*  \* \* \* I wouldn't want to swear to it, but I thought I saw him shift his speed, the speed of his car to get out of my way. He immediately tried to get out of my way. \* \* \*

"*Q.* \* \* \* Isn't it a fact \* \* \* if you had applied your brakes that you could have stopped your Chrysler sedan in the space between the crest of the hill and where this truck was?

"*A.*  No, sir. If I had I couldn't have stopped."

Plaintiff had a right to assume that there was no parked truck or car ahead of him on the highway and that there would be no persons at work around a parked truck in the traveled portion of the highway. He had no right to assume that the northerly half of the highway would be open to him for use in avoiding any obstruction on the southerly half, his half, of the highway. The jury were justified in finding that plaintiff on observing the parked truck did his utmost to avoid the collision.

The statute as to "assured clear distance ahead" does not require the driver to guard against obstructions to his progress unlawfully placed there by other persons until he can be apprised of their existence. 1 Comp. Laws 1929, § 4697, subd. (a), as amended. In the cited case of *Phillips* v. *Inter-City Trucking Service, Inc.,* 280 Mich. 30, 32, is the following:

"Plaintiff, when he discovered the object obstructing the highway, had ample time to perform the manual acts necessary to stop but, instead of stopping, he continued to drive \* \* \* at a rate of speed so that when confronted by the oncoming cars he drove into the rear of the trailer

which he knew was standing on the highway. This was negligence."

The fact that the driver in the *Phillips Case* had time to stop after he discovered the truck was parked differentiates that case from the instant case.

A similar statute in Ohio was under consideration in *Hangen* v. *Hadfield,* 135 Ohio St. 281 (20 N. E. [2d] 715), where the court said, at page 286:

"It is of course true that as the plaintiff approached the brow of the hill he knew that his view was obstructed thereby. However, it is likewise true that the plaintiff was not required to anticipate that the driver of an approaching motor vehicle would violate the law by obstructing the plaintiff's proper path."

The court ruled in that case that the claim of negligence of plaintiff was a jury question.

The question of plaintiff's contributory negligence in the instant case was a proper matter for the jury's determination. The judgment should be affirmed, with costs to plaintiffs.

Wiest and Bushnell, JJ., concurred with Reid, J.

Sharpe, J. The material facts in this case are not in dispute. The defendant's negligence is conceded and the only question is whether plaintiff is guilty of contributory negligence as a matter of law. The result to be attained will be derived from the following facts: On March 8, 1938, plaintiff, William Janks, a traveling salesman, left the village of Kingston at 10:30 a.m. and traveled east on M-46 at a rate of speed between 45 and 55 miles per hour. As he approached the crest of the hill just east of Kingston he was traveling on the south side

of the highway. At this time defendant's truck was parked on the south side of the highway facing east, and at a distance of 150 feet east of the crest of the hill. The highway at the point where the truck was parked was 30 feet wide.

John Richter, a witness produced by plaintiff, testified as follows:

"I have driven a car eight years. I've driven in that time, oh, 15,000 miles. My view was good, so I could watch the Janks car from the time it broke over the hill until the collision, and I did watch it. My judgment as to the speed of that Janks' car as it came along there, I would say between 50 and 60 miles per hour. * * * I would not say it was going between 50 and 60 miles an hour when it struck the truck.

"*Q.* How fast was it going then?

"*A.* I wouldn't know that. I was watching it. Probably slowed down to about 30 I would think at the time of the collision. When I first saw it coming over the hill it was going, in my judgment, between 50 and 60 miles an hour. It was slowing down the minute it broke over the hill. It started to slow down after it got over the top of the hill. And, it was going 30 miles an hour at the time when it struck the truck, in my judgment. It didn't stop at any time from the time it came over the hill until the collision with the truck. I could tell Mr. Janks applied his brakes in that distance. At what point he started to apply the brakes, I can't remember any more. When the collision came, this truck was forced ahead to the east on the highway and into a ditch that was there, through the ditch into a fence, which would be at the south side of the highway, and there is a break in the fence there now where that collision happened. In my judgment that truck traveled 20 feet from the time of the collision until it stopped. The Janks car at the time of the collision stopped right there. * * *

It stopped it right there, facing east. It did not leave the highway. The right-hand side of the Janks' car, the headlight, struck the left rear of the truck, on the left corner. I don't remember that there were red flags on the truck at the rear of it. This was broad daylight, a bright, clear day."

In the case at bar plaintiff had a distance of approximately 267 feet to travel from a point where he could see a part of the parked truck, and yet while traveling that distance he slackened the speed of his car only from 50 to 30 miles per hour. He did not observe the "assured clear distance" rule. (1 Comp. Laws 1929, § 4697, as amended by Act No. 119, Pub. Acts 1933 [Comp. Laws Supp. 1935, § 4697, Stat. Ann. § 9.1565]).

Under the circumstances of this case plaintiff was guilty of contributory negligence as a matter of law and may not recover. Costs to defendants.

NORTH, C. J., and STARR, BUTZEL, and BOYLES, JJ., concurred with SHARPE, J.